UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALAN D. ERICKSON AND MONICA ERICKSON,

        Plaintiffs,

v

UNITED STATES OF AMERICA,

        Defendant.

File No: 2:15-cv-

Hon.

## Complaint And Affidavit Of Merit

Come now the plaintiffs, Alan D. Erickson and Monica Erickson, by and through their attorneys, Petrucelli & Waara, P.C., and for their cause of action state:

### Parties, Jurisdiction, And Venue

1. The plaintiffs, Alan D. Erickson and Monica Erickson, reside at 604 Hamilton Avenue, Kingsford, Michigan 49802.

2. The Department of Veterans Affairs was created by the defendant, United States of America, and is a federal agency of the United States of America.

3. This action arises out of medical care provided to plaintiff Alan D. Erickson in January 2014 at the Oscar G. Johnson Veterans Administration Medical Center, 325 East "H" Street, Iron Mountain, Michigan 49801.

4. This action arises under the Federal Tort Claims Act, Sections 2671 through 2680 of Title 28 of the United States Code. This court is vested with jurisdiction pursuant to Section 1346(b) of Title 28 of the United States Code.

## Background Facts

5. The plaintiffs repeat and reallege paragraphs 1 through 4 above as if fully set forth herein.

6. Alan D. Erickson, born on 15 February, 1951, is a military veteran, having served in the U.S. Army in Vietnam in 1969.

7. On 23 October, 2008, at Aurora BayCare Medical Center in Green Bay, Wisconsin, Mr. Erickson underwent surgery for an ascending aortic aneurysm involving the arch and bileaflet aortic valve. Alexander Roitstein, M.D., assisted by Randall Southards, P.A.C, implanted a Sorin Carbomedics Carbo-Seal Valsalva Aortic Valve, Model CP-029, S/N S891093-B, to replace Mr. Erickson's aortic valve.

8. Following surgery, Mr. Erickson required long-term Warfarin therapy and was monitored by the Anticoagulation Clinic at the Oscar G. Johnson Veterans Administration Medical Center in Iron Mountain, Michigan ("VA-IM").

9. On 18 December, 2013, Mr. Erickson was seen in the Anticoagulation Clinic at the VA-IM. Alex Barker, Clinical Pharmacist, and Kristin Higgins, Pharm.D., evaluated him. His target INR was 2.5-3.0 and his current level was 2.07. He was prescribed 6 mg of Warfarin on Monday and Thursday and 7 mg on other days of the week.

10. On 30 December, 2013, Alan Erickson returned to the Anticoagulation Clinic. It was noted that the primary indication for the anticoagulation was a mechanical valve. A secondary indication was an aortic prosthetic valve with cardiopulmonary bypass and left ventricular dysfunction. On this date, Mr. Erickson's INR was 2.29.

11. Alex Barker and Dr. Higgins reported that this was Mr. Erickson's second subtherapeutic INR and increased his Warfarin to 7 mg per day, per the CHEST 2012 guidelines.

12. At this time, it was also known that Mr. Erickson was being scheduled for a colonoscopy in early January. As such, Warfarin bridging instructions were to be provided. Mr. Erickson was to return to the Anticoagulation Clinic following his colonoscopy for new lab testing and Warfarin dosage instructions.

13. On 9 January, 2014, Mr. Erickson underwent the colonoscopy.

14. On 10 January, 2014, Alex Barker and Dr. Higgins generated an addendum to Mr. Erickson's Anticoagulation Clinic note, reiterating the reasons that Mr. Erickson had been prescribed Warfarin. They noted he was now

remote from the 2008 cardiopulmonary bypass and had sustained a normal sinus rhythm with no reported episodes of atrial fibrillation.

15. Mr. Barker and Dr. Higgins also reviewed a 2008 progress note from Aurora BayCare, which indicated that Mr. Erickson had received "left femoral cannulation, right femoral A-line insertion, Bentall root replacement with 29 mm Carbomedics Valsalva graft/32 mm, and Hemiarch replacement with 32 mm Hemashield."

16. Despite this information, they made a clerical mistake. They read that Mr. Erickson had a bioprosthetic valve, rather than a mechanical valve. They further incorrectly concluded that per CHEST 2012, Section 8.2.1, Mr. Erickson no longer needed Warfarin anticoagulation therapy. Mr. Barker instructed Mr. Erickson to hold his Warfarin until further notice.

17. On 13 January, 2014, Alex Barker discussed Alan Erickson's anticoagulation therapy with John Austin, M.D., a primary care physician. Based on the information Mr. Barker provided, Dr. Austin agreed that Warfarin therapy could be discontinued.

18. Alex Barker instructed Mr. Erickson to continue to hold his Warfarin therapy. He advised Mr. Erickson that Warfarin therapy was no longer necessary, but also discussed the signs and symptoms of stroke and venous thromboembolism. Mr. Barker did tell Mr. Erickson to take 81 mg of aspirin daily for cardio protection.

19. That same day, Alex Barker and Benjamin R. Van Guilder, Pharm.D., discharged Alan Erickson from the Anticoagulation Clinic at the VA-

IM. All pending labs and appointments were canceled. Alan Erickson's Warfarin prescription was discontinued.

20.     On 21 June, 2014, Alan Erickson suffered a massive right MCA stroke, without hemorrhage, while visiting family in Tennessee. He presented with left-sided paralysis, dysphagia, cognitive deficits, and swallowing difficulties.

21.     On 22 June, 2014, at Holston Valley Medical Center in Kingsport, Tennessee, Dr. Aaron Miller reviewed the films of a CT of the head without contrast. It revealed the loss of the gray-white junction within the anterior temporal lobe, insula, basal ganglia, and right frontal lobe, resulting from an MCA territory infarction. There was cerebral swelling present with effacement of the sulci. No hemorrhagic stroke was seen.

22.     After a seven-day waiting period to insure that Mr. Erickson was no longer at risk for hemorrhagic CVA transformation, his Warfarin therapy was restarted. Mr. Erickson continues to require Warfarin therapy to the present day.

23.     On 26 June, 2014, Mr. Erickson was discharged from Holsten Valley Medical Center to HealthSouth Rehabilitation Hospital in Kingsport, Tennessee, for rehabilitative care.

24.     On 25 July, 2014, Alan Erickson was transferred to the CLC unit at the VA-IM in Michigan, where he remained hospitalized until February 2015.

25. Despite extensive occupational, speech, and physical therapy, Mr. Erickson's left-sided hemiparesis and neurological deficits continue to the present day.

26. As a direct and proximate result of the defendant's conduct, plaintiff Alan Erickson suffered a massive right middle cerebral artery (MCA) stroke, resulting in left-sided hemiparesis and permanent brain and neurological damage.

27. As a further direct and proximate result of the defendant's conduct, plaintiff Alan Erickson has and will continue to suffer pain and permanent impairment, and has and will continue to require extensive medical care, speech and language therapy, physical therapy, occupational therapy, pharmaceutical services, orthotics, assistive devices, and stroke rehabilitation and nursing services.

28. As a further result of the occurrence, plaintiff Alan Erickson has incurred medical expenses and will, in reasonable probability, incur medical expenses for the rest of his natural life.

29. As a further result of the occurrence, plaintiff Alan Erickson has and will suffer physical pain and mental anguish, physical impairment, disfigurement, humiliation, and embarrassment.

30. As a result of the injuries to her husband, plaintiff Monica Erickson has sustained a loss of society, companionship, services, and consortium.

## Count I
### (Pharmacy Negligence Of United States Of America)

31.     The plaintiffs repeat and reallege paragraphs 1 through 30 above, as if fully set forth herein.

32.     At the time giving rise to this action, the United States of America, through its federal agency, the Department of Veterans Affairs, and its pharmacists, Alex Barker, Kristin Higgins, Pharm.D., and Benjamin R. Van Guilder, Pharm.D., as duly authorized agents, servants, and/or employees, undertook to provide pharmaceutical care to Alan Erickson.

33.     Defendant United States of America, through its federal agency, the Department of Veterans Affairs, and its pharmacists, Alex Barker, Kristin Higgins, Pharm.D., and Benjamin R. Van Guilder, Pharm.D., as duly authorized agents, servants, and/or employees, owed a duty to Alan Erickson to skillfully, prudently, and thoroughly provide pharmaceutical care to him in such a manner as would a reasonably prudent pharmacist confronted with the same or similar conditions and circumstances.

34.     Defendant United States of America, through its federal agency, the Department of Veterans Affairs, and its pharmacists, Alex Barker, Kristin Higgins, Pharm.D., and Benjamin R. Van Guilder, Pharm.D., as duly authorized agents, servants, and/or employees, breached the duty owed to Alan Erickson in one or more of the following ways, by:

(a)  Making the determination Alan Erickson had no need for continuing anticoagulation drug therapy after 10 January 2014;

(b)  Making the clerical mistake when reading Mr. Erickson's medical record that his implanted Sorin Carbomedics Carbo-Seal Valsalva Model CP-029 aortic valve was a bioprosthetic valve, rather than a mechanical valve.;

(c)  Disregarding the medical literature that Mr. Erickson's Sorin Carbomedics Carbo-Seal Valsalva Model CP-029 aortic valve required lifetime anticoagulation therapy;

(d)  Making the clerical mistake that Mr. Erickson had a mechanical rather than a bioprosthetic valve, requiring continuing anticoagulation drug therapy;

(e)  Incorrectly concluding that pursuant to CHEST 2012, Section 8.2.1, Mr. Erickson no longer required Warfarin anticoagulation therapy;

(f)  Canceling Alan Erickson's pending labs and future appointments and discharging Mr. Erickson from the Anticoagulation Clinic on 13 January, 2014;

(g)  Advising Alan Erickson's primary care doctor that anticoagulation therapy should be discontinued.

35. Defendant United States of America, through its federal agency, the Department of Veterans Affairs, and its pharmacist, Alex Barker, as a duly authorized agent, servant, and/or employee, further breached the duty owed to Alan Erickson in one or more of the following ways, by:

   (a) Advising Alan Erickson on 10 January, 2014, to stop taking his Warfarin until further notice;

   (b) Incorrectly advising Alan Erickson's primary care physician on 13 January, 2014, that Alan Erickson no longer required Warfarin anticoagulation therapy;

   (c) Incorrectly advising Alan Erickson on 13 January, 2014, that his Warfarin anticoagulation therapy was unnecessary and he should continue not taking it.

36. By virtue of the doctrine of *respondeat superior* and/or agency by estoppel, the United States of America, is responsible for the negligent conduct of its agents, employees, and/or independent contractors.

37. Defendant United States of America's conduct was a proximate cause of the occurrence and the injuries and damages sustained by plaintiffs Alan D. Erickson and Monica Erickson.

38. On or about 2 January, 2015, the plaintiffs submitted Administrative Tort Claims based on the allegations set out in this complaint and served them on the United States of America demanding damages. Attached and

marked as Exhibits A and B are copies of the Administrative Tort Claims filed by the plaintiffs.

39.     On 30 June, 2015, the United States of America denied both claims.  A copy of Regional Counsel Mark Romaneski's denial letter is attached as Exhibit C.

Wherefore, the plaintiffs, Alan D. Erickson and Monica Erickson, seek judgment against the defendant, United States of America, in whatever amount the plaintiffs are found to be entitled to in excess of seventy-five thousand and no/100 dollars ($75,000.00), plus the costs of bringing this action, including reasonable attorney fees, interest and costs, and for such other and further relief as the court may deem just and proper.

## Count II
## (Ordinary Negligence Of United States Of America)

40.     The plaintiffs repeat and reallege paragraphs 1 through 39 as if fully set forth herein.

41.     Defendant United States of America, through its employees, agents and/or independent contractors, owed a duty to Alan D. Erickson to exercise ordinary care when reading and interpreting documentation and literature regarding his prosthetic aortic valve.

42.     Defendant United States of America, through its employees, agents and/or independent contractors, breached the duty owed to Alan D. Erickson in January 2014 by making the clerical mistake when reading Mr.

Erickson's medical record that his implanted Sorin Carbomedics Carbo-Seal Valsalva Model CP-029 aortic valve was a bioprosthetic valve, rather than a mechanical valve

43. The breach of the duty of care owed to Alan D. Erickson by the United States of America, through its employees, agents and/or independent contractors, to exercise ordinary care when it misread that he had a bioprosthetic valve as opposed to a mechanical valve is within the common knowledge and experience of all individuals, does not require medical judgment, and does not require expert testimony.

44. The defendant's negligence is a proximate cause of the occurrence and the injuries and damages sustained by the plaintiffs.

Wherefore, the plaintiffs, Alan D. Erickson and Monica Erickson, seek judgment against the defendant, United States of America, in whatever amount the plaintiffs are found to be entitled to in excess of seventy-five thousand and no/100 dollars ($75,000.00), plus the costs of bringing this action, including reasonable attorney fees, interest and costs, and for such other and further relief as the court may deem just and proper.

Dated: July 15, 2015

Petrucelli & Waara, P.C.
Attorneys for Plaintiffs

By: s/Vincent R. Petrucelli
Vincent R. Petrucelli
328 West Genesee St., P.O. Box AA
Iron River, Michigan 49935
Telephone: 906-265-6173
vincent@truthfinders.com

## Affidavit Of Merit

STATE OF MASSACHUSETTS )
:ss
COUNTY OF SUFFOLK )

Richard B. Dew III, being first duly sworn, deposes and states:

1. My name is Richard B. Dew III. I am a licensed pharmacist, and I reside in West Roxbury, Massachusetts.

2. I have received and reviewed Standard Form 95, Claim for Damage, Injury, or Death, with attachments, regarding pharmaceutical care provided to Alan Erickson by Alex Barker, Kristin Higgins, Pharm.D., and Benjamin R. Van Guilder, Pharm.D. The notice of claim was provided to me by Mr. Erickson's attorney, Vincent R. Petrucelli. I also received and reviewed medical records compiled by various health care providers, including Alex Barker, Kristin Higgins, Pharm.D., and Benjamin R. Van Guilder, Pharm.D., who saw and treated Alan Erickson. These records were likewise supplied by Attorney Petrucelli.

3. Alex Barker, Kristin Higgins, Pharm.D., and Benjamin R. Van Guilder, Pharm.D., the pharmacists who provided pharmaceutical care to Alan

Erickson in January 2014 in the Anticoagulation Clinic at the Oscar G. Johnson Veterans Administration Medical Center in Iron Mountain, Michigan, were required to meet recognized standards of care under the circumstances that existed when Mr. Erickson was seen and treated.

4. When providing anticoagulation monitoring and drug therapy services to a patient on long-term Warfarin therapy following implantation of a mechanical aortic valve, the standard of care requires that a pharmacist correctly assess the patient's need for continuing anticoagulation therapy. Under the circumstances existing in this case, the standard of care required that the pharmacists understand the true nature of the patient's aortic valve, carefully review and correctly interpret the medical literature regarding the patient's aortic valve, recognize that the patient had a mechanical rather than a bioprosthetic valve, and further recognize and act upon the knowledge that the patient required continuing anticoagulation drug therapy. The standard of care further required that the pharmacists not incorrectly advise the patient and his treating physician that the patient no longer required anticoagulation drug therapy.

5. It is my opinion that the pharmaceutical care provided to Alan Erickson by Alex Barker, Kristin Higgins, Pharm.D., and Benjamin R. Van Guilder, Pharm.D., fell below the standard of care as set out in Item 4 above.

6. Alex Barker, Kristin Higgins, Pharm.D., and Benjamin R. Van Guilder, Pharm.D., breached the standard of care owed to Alan Erickson by:

(a) Failing to correctly assess Alan Erickson's need for continuing anticoagulation drug therapy in January 2014;

(b) Failing to understand the true nature of Mr. Erickson's Sorin Carbomedics Carbo-Seal Valsalva Model CP-029 aortic valve;

(c) Failing to carefully review and correctly interpret the medical literature regarding Mr. Erickson's Sorin Carbomedics Carbo-Seal Valsalva Model CP-029 aortic valve;

(d) Failing to recognize that Mr. Erickson had a mechanical rather than a bioprosthetic valve, requiring continuing anticoagulation drug therapy;

(e) Incorrectly concluding that pursuant to CHEST 2012, Section 8.2.1, Mr. Erickson no longer required Warfarin anticoagulation therapy;

(f) Canceling Alan Erickson's pending labs and future appointments and discharging Mr. Erickson from the Anticoagulation Clinic on 13 January, 2014;

(g) Failing to prevent further harm to Alan Erickson.

7. Alex Barker further breached the standard of care owed to Alan Erickson by:

(a) Advising Alan Erickson on 10 January, 2014, to stop taking his Warfarin until further notice;

(b) Incorrectly advising Alan Erickson's primary care physician on 13 January, 2014, that Alan Erickson no longer required Warfarin anticoagulation therapy;

(c) Incorrectly advising Alan Erickson on 13 January, 2014, that his Warfarin anticoagulation therapy was unnecessary and he should continue not taking it.

8. In my opinion, the breach of the standard of care, as set out above, by Alex Barker, Kristin Higgins, Pharm.D., and Benjamin R. Van Guilder, Pharm.D., proximately caused Alan Erickson to suffer a massive right middle cerebral artery (MCA) stroke, resulting in left-sided hemiparesis and permanent brain and neurological damage. As a further result of Alex Barker's, Kristin Higgins, Pharm.D.'s, and Benjamin R. Van Guilder, Pharm.D.'s breach of the standard of care, Mr. Erickson has and will continue to suffer pain and permanent impairment, and has and will continue to require extensive medical care, speech and language therapy, physical therapy, occupational therapy, pharmaceutical


services, orthotics, assistive devices, and stroke rehabilitation and nursing services.

9. Further affiant sayeth not.

_Richard B. Dew III_

Subscribed and sworn to this __6__ day of __April__, 2015, before me a notary public in and for said County, personally appeared the above-named Richard B. Dew III, and made oath that he has read the foregoing affidavit by him subscribed and knows the contents thereof and that the same is true of his own knowledge, except as to those matters therein stated to be on information and belief, and as to those matters he believes them to be true.

_Domenic Trano_

Notary Public, County of Suffolk
State of Massachusetts
My commission expires:

July 21, 2017